UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JG & PG on behalf of their minor child, JG III and           :
on their own behalves, LA & GA on behalf of their
minor child, FA, and on their own behalves, MS               :
and RS, on their own behaves and on behalf of their
minor child, MAS, TS and NS on behalf of their               :
minor child VS and on their own behalves, LB
on behalf his minor child RB and on his own behalf,          :
TC and TC, on behalf of their minor son, NC, and
on their own behalves, RB on behalf of her minor             :
son, NB and on her own behalf,

                                                             :

                    Plaintiffs,

                                                             :

        v.

                                                             :

TAMMY CARD, JOYCE SPIEGEL, LORRIE
REYNOLDS, JOSEPH LEVY, SHERRY                                 :
STREITAS, CAROL DeALLEAUME,
DR. ROBERT J. REIDY, JR., MAHOPAC                            :
CENTRAL SCHOOL DISTRICT,

                                                             :

                    Defendants.
-------------------------------------------------------------X

08 CV 5668 (SCR)

## MEMORANDUM OF LAW
## <u>IN SUPPORT OF MOTION TO DISMISS</u>

SNITOW KANFER HOLTZER
& MILLUS, LLP
575 Lexington Avenue
New York, New York 10022
(212) 317-8500

*Counsel for Defendants*
*Dr. Robert J. Reidy, Jr. and*
*Mahopac Central School District*

Of Counsel,
        Paul F. Millus
        Virginia K. Trunkes

## **TABLE OF CONTENTS**

**Page**

TABLE OF CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE COMPLETE FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

THE COMPLAINT'S CAUSES OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT  I     THE COMPLAINT DOES NOT MAKE OUT A CLAIM
             WHEREBY REIDY OR THE DISTRICT WOULD BE
             LIABLE FOR VIOLATING PLAINTIFFS' RIGHTS TO
             SUBSTANTIVE DUE PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

         A.   The Facts Alleged Do Not Make Out a Claim
              that Reidy Deprived Plaintiffs of a Constitutional
              Right . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

              1.    There is No Allegation of an
                    Underlying Constitutional Right
                    Which Reidy Violated . . . . . . . . . . . . . . . . . . . . . . . . . . 7

              2.    There is No Inference that Reidy's
                    Actions Were Taken Recklessly
                    or With Deliberate Indifference . . . . . . . . . . . . . . . . . . . 9

         B.   Plaintiff-Parents Lack Standing to Assert a
              Violation of the Plaintiff-Children's Constitutional
              Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

         C.   The Complaint Fails to Plead Any Allegation of
              Personal Involvement of Defendant Reidy  . . . . . . . . . . . . . . . . 12

i

**TABLE OF CONTENTS   (Cont'd)**

**Page**

    1.    No Participation, Failure to Remedy
a Wrong . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    2.    No Creation of a Policy or Custom . . . . . . . . . . . . . . . . . . 15

    3.    No Gross Negligence in Supervising
Subordinates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    4.    No Deliberate Indifference Due to
Failure to Act on Information . . . . . . . . . . . . . . . . . . . . . . 19

   D.   The District is Not Liable Under Section 1983 . . . . . . . . . . . . . 19

   E.   Reidy is Protected by the Doctrine of Qualified
Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

POINT  II    THE ALLEGATIONS DO NOT SUPPORT AN
INFERENCE THAT THE DISTRICT WOULD BE
VICARIOUSLY LIABLE FOR THE ALLEGED
MISCONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

POINT  III    PLAINTIFFS HAVE NOT STATED A CLAIM FOR
NEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

POINT  IV    PLAINTIFFS HAVE NOT STATED A CLAIM FOR
VIOLATION OF EXECUTIVE LAW § 296 . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF CASES

**Page(s)**

Aggarwal v. N.Y. City Health & Hosp. Corp.,
    2000 WL 172787 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Anderson v. Creighton,
    483 U.S. 635, 107 S.Ct. 3034 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Baker v. McCollan,
    443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Broadrick v. Oklahoma,
    413 U.S. 601,  93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) . . . . . . . . . . . . . . . . . . . . . . . . 12

Bruno v. Pembrook Mgmt., Inc.,
    212 A.D.2d 314, 628 N.Y.S.2d 971 (2d Dep't 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 24

Calder v. Planned Community Living, Inc.,
    1995 WL 456400 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Capasso v. Metro. Transp. Auth. of State of N.Y.,
    198 F.Supp.2d 452 (S.D.N.Y.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Claybrook v. Birchwell,
    199 F.3d 350 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Coffey v. City of New York,
    49 A.D.3d 449, 853 N.Y.S.2d 551 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Collins v. Harker Heights,
    503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) . . . . . . . . . . . . . . . . . . . . . . . 7

Colodney v. Continuum Health Partners, Inc.,
    2004 WL 829158 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Colon v. Coughlin,
    58 F.3d 865, 873 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

County of Sacramento v. Lewis,
    523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) . . . . . . . . . . . . . . . . 7, 9 n.1, 10

**TABLE OF CASES  (Cont'd)**

Page(s)

Dangler v. N.Y. City Off Track Betting Corp.,
  193 F.3d 130 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Daniels v. Williams,
  474 U.S. 327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Davidson v. Cannon,
  474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) . . . . . . . . . . . . . . . . . . . . . . 8, 9

Davis v. City of New York,
  226 A.D.2d 271, 641 N.Y.S.2d 275 (1st Dept. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 22

Dawson v. County of Westchester,
  351 F.Supp.2d 176 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

DeShaney v. Winnebago County Dept. of Social Servs.,
  489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 7

Doe v. Whitney,
  8 A.D.3d 610, 779 N.Y.S.2d 570 (2d Dep't 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Estevez-Yalcin v. Children's Vill.,
  331 F.Supp.2d 170 (S.D.N.Y.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Ford v. Moore,
  237 F.3d 156 (2d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Galvani v. Nassau County Police Indemnification Review Bd.,
  242 A.D.2d 64, 674 N.Y.S.2d 690 (2d Dept. 1998) . . . . . . . . . . . . . . . . . . . . . . 22, 23

Gan v. City of New York,
  996 F.2d 522 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Gibson v. Commissioner of Mental Health,
  2006 WL 1234971 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Graham v. Connor,
  490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) . . . . . . . . . . . . . . . . . . . . . . . 6

## TABLE OF CASES  (Cont'd)

Page(s)

Griffin v. City of New York,
       287 F.Supp.2d 392 (S.D.N.Y.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Hanrahan v. Doling,
       331 F.3d 93 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Harhay v. Town of Ellington Bd. of Educ.,
       323 F.3d at 206, 211 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Harrison v. Harlem Hosp.,
       2007 WL 2822231 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Haybeck v. Prodigy Serv. Co.,
       944 F.Supp. 326 (S.D.N.Y.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Heindel v. Bowery Savings Bank,
       138 A.D.2d 787, 525 N.Y.S.2d 428 (3rd Dept. 1988) . . . . . . . . . . . . . . . . . . . . . . . 23

Hiller v. County of Suffolk,
       81 F.Supp.2d 420 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Island Associated Coop., Inc. v. Hartmann,
       118 A.D.2d 830, 500 N.Y.S.2d 315 (2d Dept. 1986) . . . . . . . . . . . . . . . . . . . . . . . 23

Jean-Laurent v. Wilkerson,
       438 F.Supp.2d 318 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Jean-Laurent v. Wilkinson,
       540 F.Supp.2d 501 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Kramer v. City of New York,
       No. 04 Civ. 106, 2004 WL 2429811 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Liscio v. Warren,
       901 F.2d 274 (2d Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

Lowrance v. Achtyl,
       20 F.3d 529 (2d. Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

v

## TABLE OF CASES  (Cont'd)

**Page(s)**

Malley v. Briggs,
    475 U.S. 335, 106 S.Ct. 1092 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Mitchell v. Forsyth,
    472 U.S. 511, 105 S.Ct. 2806 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Monell v. Dep't of Soc. Servs.,
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) . . . . . . . . . . . . . . . . . . . . 13, 19-20

Mortise v. United States,
    102 F.3d 693 (2d Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Murray v. Research Found. of State Univ. of N.Y.,
    283 A.D.2d 995, 723 N.Y.S.2d 805 (4th Dep't 2001) . . . . . . . . . . . . . . . . . . . . . . . . 18

Neighbour v. Covert,
    68 F.3d 1508 (2d Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pabon v. Wright,
    459 F.3d 241 (2d Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Phillips ex rel. Green v. City of New York,
    453 F.Supp.2d 690, 734 (S.D.N.Y.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ricciuti v. New York City Transit Auth.,
    941 F.2d 119 (2d Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Riviello v. Waldron,
    47 N.Y.2d 297, 418 N.Y.S.2d 300 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rodenhouse v. Palmyra-Macedon Cent. School Dist.,
    2008 WL 2331314 (W.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Saucier v. Katz,
    533 U.S. 194, 121 S.Ct. 2151 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20, 21

Shomo v. City of New York,
    2005 WL 756834 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF CASES  (Cont'd)

**Page(s)**

Skehan v. Village of Mamaroneck,
    465 F.3d 96, 107 (2d Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Stavitz v. City of New York,
    98 A.D.2d 529, 471 N.Y.S.2d at 272, 274.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

T.W. v. City of New York,
    286 A.D.2d 243, 729 N.Y.S.2d 96 (1st Dep't 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tesoriero v. Syosset Central School Dist.,
    382 F.Supp.2d 387 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

Tierney v. City of New York,
    2007 WL 895133 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Torres v. Howell,
    2006 WL 1525942 (D.Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Turpin v. Mailet,
    579 F.2d 152 (2d Cir.) (Turpin I), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Turpin v. Mailet,
    591 F.2d 426 (2d Cir. 1979) (Turpin II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Walker v. City of New York,
    974 F.2d 293 (2d Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

West Haven v. Turpin,
    439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Weyant v. Okst,
    101 F.3d 845 (2d Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

WTC Families for a Proper Burial, Inc. v. City of New York,
    --- F.Supp.2d ----, 2008 WL 2669449 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . 9, n.1

### TABLE OF CASES  (Cont'd)

**Page(s)**

Yant v. Scholack,
      1998 WL 157053 (S.D.N.Y. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JG & PG on behalf of their minor child, JG III and      :
on their own behalves, LA & GA on behalf of their               08 CV 5668 (SCR)
minor child, FA, and on their own behalves, MS          :
and RS, on their own behaves and on behalf of their
minor child, MAS, TS and NS on behalf of their          :
minor child VS and on their own behalves, LB
on behalf his minor child RB and on his own behalf,     :
TC and TC, on behalf of their minor son, NC, and
on their own behalves, RB on behalf of her minor        :
son, NB and on her own behalf,

                                                        :

                    Plaintiffs,
                                                        :

            v.
                                                        :

TAMMY CARD, JOYCE SPIEGEL, LORRIE
REYNOLDS, JOSEPH LEVY, SHERRY               :
STREITAS, CAROL DeALLEAUME,
DR. ROBERT J. REIDY, JR., MAHOPAC          :
CENTRAL SCHOOL DISTRICT,

                                                        :

                    Defendants.
----------------------------------------------------------------X


# MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS


### PRELIMINARY STATEMENT

Defendants Dr. Robert J. Reidy, Jr., individually and in his official capacity, and

the Mahopac Central School District (the "District") submit this motion pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure for failure to state a cause of action.

Plaintiffs have commenced this action against the District and several of its

employees in connection with the alleged violation of Plaintiffs' constitutional rights and with

other tort claims stemming from alleged misconduct toward several students.  While the

Complaint is very detailed regarding the alleged statements and actions toward the students giving

rise to this action, it is barren of allegations connecting the alleged misconduct with the District and its employees not alleged to have been involved, e.g., defendant Reidy.

The only allegations concerning Reidy pertain to his handling of the matter after-the-fact, when he was allegedly first informed of an issue regarding the Plaintiff-children and did not immediately reveal the details of the alleged occurrences at the initial part of the District's investigation. However, Reidy's withholding of information pending the confirmation of its accuracy does not give rise to the deprivation of a constitutional right. For that reason it would not be clear to him that he was depriving people of their constitutional rights such as to divest him of his qualified immunity. Nor would the use of discretion in making such a decision subject him or the District to liability under the state Human Rights Law.

Plaintiffs also try to bootstrap their constitutional and tort claims against Reidy and the District by alleging, without any supporting facts, that they were negligent in hiring, retaining and supervising the alleged tortfeasors. In that regard, Plaintiffs claim that Reidy and the District negligently inflicted emotional distress on the children, and that the District is vicariously liable for the negligent and intentional acts and omissions of the various employees allegedly involved in the misconduct. All of these derivative claims also fail as a matter of law.

As demonstrated below, on their face, Plaintiffs' allegations as against Reidy and the District are legally insufficient because they fail to fulfill the elements necessary to state a claim for which Reidy and the District would be liable. Accordingly, the Complaint is facially deficient and must be dismissed as against Reidy and the District.

2

## THE COMPLAINT'S FACTUAL ALLEGATIONS

The nucleus of the instant action involves claims of certain statements and actions taken toward autistic students by District employees who worked at the Mahopac Falls Elementary School within the school's "Bridge Program." All of the individual employees are alleged to have directly participated in this misconduct except for defendants Reidy and DeAlleaume.  Due to this alleged misconduct, Plaintiffs allege that Plaintiff-parents "have been subjected to extreme emotional distress" by each and all of the Defendants' conduct, and that both Plaintiff-parents and Plaintiff-children "have suffered severe anxiety, emotional distress, humiliation and trauma as a result of the actions and omissions of the defendants and each of them." Compl. ¶¶ 194-95.  Plaintiff-parents allege that they have expended many hours and substantial sums of money due to Defendants' wrongful acts and omissions. Compl. ¶ 196.

As it pertains to defendant Reidy, the Complaint alleges that he is responsible for operating the District, including the hiring, retention and appropriate training and discipline of staff, their supervision and training. Compl. ¶ 9.  Additionally, Reidy is allegedly an official with policy-making authority with respect to the District's administration of the Bridge Program. Compl. ¶ 202.

The Complaint states that at some point during the 2006-07 school year, several employees working in the Bridge Program mistreated and engaged in certain inappropriate behavior toward the Program's students.  Compl. ¶¶ 10-11.  The Complaint then provides that on March 20, 2007, the Plaintiff-parents were notified that DeAlleaume and Reidy wanted to meet with them "to provide information regarding the Bridge program." Compl. ¶14.

At the time of this first meeting, on March 23, 2007, Reidy allegedly told parents

3

"that there had been allegations made regarding teachers within the Bridge Program, that defendants Reidy and the district were investigating and that he had no information which he could then release to anyone." Compl. ¶ 14. Reidy also allegedly stated at this meeting that there was dissension between aides and the teacher and that this had nothing to do with the children, that the district was investigating but could not release any information as it wasn't pertinent to the children." Compl. ¶ 14. Further, Reidy allegedly stated that "there was a problem amongst the adults in the Bridge Program and they needed to figure out what happened and that several people were being suspended from work," and that he "falsely stated that none of the children had been involved or affected."  Compl. ¶ 119-20.  The Complaint adds that also at that first meeting "Reidy disclaimed any knowledge" of whether the issue had anything to do with a child whom their children reported had been screaming in the classroom. Compl. ¶ 121.

The Complaint continues in alleging that at a second meeting held soon thereafter, "Reidy reported that certain children in the class had been involved but would not discuss what happened with all parents." Compl. ¶ 15.  Additionally, following the arrest of the employees who allegedly engaged in the misconduct, Reidy allegedly stated: "Parents entrust their children to us and I will do everything within my power to protect all of our children all of the time." Compl. ¶ 18.  Further, the Complaint alleges that "school administrators" knew about the misconduct in the Bridge Program a least a month earlier. Compl. ¶ 122.

Focusing on Reidy, DeAlleaume and the District, the Complaint alleges that all three were grossly negligent or negligent in hiring, training and/or supervising the individual co-defendants and that such gross negligence and/or negligence was a proximate cause for the acts and omissions alleged and the resultant damages. Compl. ¶ 197.  The Complaint alleges that

4

Reidy, DeAlleaume and the District as well as defendant Card each had a duty to supervise and prevent harm to the Plaintiff-minors, and that "by policy, practice and/or custom, the District failed to properly hire, train and/or supervise teachers' aides and those assigned to interact with classified students." Compl. ¶ 198-99. The Complaint adds that the misconduct of the employees in the Bridge Program "were foreseeable and proper supervision of the Bridge Program would have detected them and was necessary to prevent them." Compl. ¶ 201.

## THE COMPLAINT'S CAUSES OF ACTION

As for its four causes of action involving Reidy, the Complaint first alleges that "defendants' concerted conduct ... is shocking to the conscience," and that by virtue thereof:

> each defendant violated the right of each plaintiff, including the minor children, or facilitated/allowed the violation of each's right to substantive due process, as protected by the Fourteenth Amendment to the United States Constitution enforced by and through 42 U.S.C. sec. 1983. Compl. ¶ 204.

That is the extent to which the Complaint discusses the alleged Constitutional violation.

Second, the Complaint alleges that Reidy, DeAlleaume and the District negligently inflicted emotional distress "as their negligent acts and/or omissions foreseeably and unreasonably endangered the physical safety of the minor children entrusted to their care and supervision." Compl. ¶ 206. Third, the Complaint avers that Reidy, DeAlleaume and the District were "negligent, causing injury to each of the plaintiffs, including the minor children, supervision over whom was their mandatory duty." Compl. ¶ 207. Fourth, the Complaint alleges that each defendant violated Executive Law § 296 by discriminating against the Plaintiff children on the basis of their disability. Compl. ¶ 216.

Finally, the Complaint claims that the defendant District "is vicariously liable to Plaintiffs for the negligent and intentional acts and omissions of its agents as set forth herein because the individual defendants' wrongful acts and omissions were facilitated by their employment with the school district and, though wrongful, were undertaken within the scope of their employment." Compl. ¶ 217.

As demonstrated below, none of these allegations give rise to a viable claim against Reidy or the District and the pleading should be dismissed with prejudice.

## ARGUMENT

## POINT I

### THE COMPLAINT DOES NOT MAKE OUT A CLAIM WHEREBY REIDY OR THE DISTRICT WOULD BE LIABLE FOR VIOLATING PLAINTIFFS' RIGHTS TO SUBSTANTIVE DUE PROCESS

Plaintiffs have brought their claim under 42 U.S.C. § 1983, which imposes civil liability only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).

Thus, in deciding whether Reidy is subject to a suit for damages pursuant to § 1983, the Court must first decide if the facts alleged make out the deprivation of a constitutional right. Skehan v. Village of Mamaroneck, 465 F.3d 96, 107 (2d Cir.2006)  (citing Saucier v. Katz,

6

533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  If those facts would constitute a

deprivation, the court should grant qualified immunity if either the legal right allegedly violated

was not clearly established at the time of the defendant's conduct, or the defendant's action was

objectively reasonable in light of the clearly established legal rules then in effect. See Skehan, 465

F.3d at 107.

**A.     The Facts Alleged Do Not Make Out a Claim that
        Reidy Deprived Plaintiffs of a Constitutional Right**

    **1.     There is No Allegation of an Underlying
            Constitutional Right Which Reidy Violated**

Viewing the allegations in the light most favorable to Plaintiffs, it is difficult to

identify precisely the constitutional violation alleged against Reidy. See Baker, 443 U.S. at 140.

Plaintiffs aver that Reidy and the other defendants violated their right to

substantive due process as protected under the Fourteenth Amendment.  The Fourteenth

Amendment provides, *inter alia*, that "[n]o State shall ... deprive any person of life, liberty, or

property, without due process of law." U.S. Const., Amdt. 14, § 1.  The courts have held that

provision to bar certain government actions amounting to substantive due process violations.

County of Sacramento v. Lewis, 523 U.S. 833, 840, 846, 118 S.Ct. 1708, 140 L.Ed.2d

1043(1998); see Collins v. Harker Heights, 503 U.S. 115, 126, 112 S.Ct. 1061, 1069, 117 L.Ed.2d

261 (1992) (noting that the Due Process Clause was intended to prevent government officials " '

"from abusing [their] power, or employing it as an instrument of oppression" ' ") (quoting

DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 196, 109 S.Ct. 998, 1003,

103 L.Ed.2d 249 (1989), in turn quoting Davidson v. Cannon, 474 U.S. 344, 348, 106 S.Ct. 668,

7

670-671, 88 L.Ed.2d 677 (1986)).

To state a claim for violation of substantive due process rights, a plaintiff must first identify the constitutional right at stake, and then allege that the deprivation was "arbitrary in the constitutional sense". Lowrance v. Achtyl, 20 F.3d 529, 537 (2d. Cir.1994). Here Plaintiffs allege that at the end of March 2007, Reidy informed the Plaintiff parents that allegations had been made against some teachers in the Bridge Program regarding conduct occurring during the 2006-07 year, that the matter was under investigation and that he had no further information. Compl.¶¶ 14-15, 119. Reidy also allegedly denied that the problem concerned the children, stated that it was amongst the adults and that some people had been suspended, and denied knowing whether the issue involved a child known to scream in class. Compl.¶¶ 14, 120-121. A few days later Reidy allegedly admitted that the matter involved the children but stated that he still could not provide details, and also declared that he would do "everything" within his power to protect all of the school's children "all of the time." Compl.¶¶ 15, 18. The Complaint adds that "school administrators" had known about "misconduct" in the Bridge Program at least one month before parents were advised "of the issues." Compl. ¶ 122.

Thus, the Complaint asserts that Reidy himself possessed information about misconduct regarding the children for some period of time without revealing the facts to the parents, or, at worst, misrepresented that the matter did not involve the children. Without more, these allegations do not amount to a violation of either the Plaintiff-parents' or Plaintiff-children's constitutional rights. There is no constitutional right to be immediately informed of accurate details of an ongoing investigation of an event which has already occurred before the investigation is completed. Nor is there a constitutional right not to be apprised of an accurate account about

the details, or even the severity, of an event after it has occurred. Accordingly, based on the

allegations asserted as against Reidy and the District, Plaintiffs have not even articulated what

constitutional right Reidy violated by being less than forthcoming, or even misrepresenting the

facts, pending further investigation after the misconduct had occurred.

### 2. There is No Inference that Reidy's Actions Were Taken Recklessly or With Deliberate Indifference

To state a proper claim of violation of their substantive rights, in addition to

identifying the constitutional right at stake, Plaintiffs must also allege, assuming the defendant's

actions were carried out under other than exigent circumstances,[1] that the actions were taken

recklessly or with deliberate indifference to the plaintiff's rights. See WTC Families for a Proper

Burial, Inc. v. City of New York, --- F.Supp.2d ----, 2008 WL 2669449, *7 (S.D.N.Y. 2008);

Pabon v. Wright, 459 F.3d 241, 251 (2d Cir.2006). Evaluating deliberate indifference invokes "an

objective standard, requiring determination of what the official knew or should have known."

Weyant v. Okst, 101 F.3d 845, 856 (2d Cir.1996), (citing Liscio v. Warren, 901 F.2d 274, 276-77

(2d Cir.1990)). A mere lack of due care does not rise to the level of a substantive due process

violation. Davidson v. Cannon, 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Daniels

v. Williams, 474 U.S. 327, 332, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986); Pabon, 459 F.3d at 250.

Here, nothing in the Complaint indicates that by failing to contact the parents and

---

[1]     If the actions were carried out under exigent circumstances, the standard for deprivation of a constitutional right would be higher, to wit, that the deprivation rose to the level of egregious or arbitrary conduct that shocks the conscience. See WTC Families for a Proper Burial, Inc. v. City of New York, --- F.Supp.2d ----, 2008 WL 2669449, *7 (S.D.N.Y. 2008); County of Sacramento v. Lewis, 523 U.S. 833, 840, 853-54, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

provide information immediately following the alleged tortious activity, Reidy displayed a mental

state of "deliberate indifference" in order to "meaningfully be termed culpable" under §1983.

Turpin v. Mailet, 579 F.2d 152, 166 (2d Cir.) (Turpin I), vacated sub nom. West Haven v. Turpin,

439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978), on remand Turpin v. Mailet, 591 F.2d 426 (2d

Cir. 1979) (Turpin II).  To the contrary, the Complaint acknowledges that it was at the initiative of

Reidy and DeAlleaume that Reidy met with the Plaintiff-parents and announced that the matter

was under investigation and that for the time being he could not provide any further information.

As the District employee alleged to be in charge of operating the District (Compl. ¶ 9), Reidy was

justified in withholding information until a more accurate and detailed account could be

confirmed.  It was Reidy's obligation to ensure that the investigation was not inhibited by the

publication of a erroneous account.  The District has an interest in ensuring that the alleged

victims' testimony is not influenced and that the alleged perpetrators do not gain an advantage in

creating a defense by the premature release of information.  In order to effectively provide its

services, the District has to minimize the possibility of an uproar, particularly if the allegations are

ultimately unfounded.  Accordingly, affording the Complaint every favorable inference, the only

reasonable inference is that Reidy had a legitimate governmental objective in withholding

information and even lying about the involvement of the children before additional, confirmed,

information became available.

Only a purpose to cause harm unrelated to a legitimate governmental objective will

satisfy the element of arbitrary conduct necessary for a due process violation. County of

Sacramento v. Lewis, 523 U.S. 833, 836, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).  Thus, Reidy

could not have violated a constitutional right because there is no reasonable inference that he had

only a purpose to cause harm when he was allegedly less than forthcoming about the misconduct in the early part of the District's investigation.

**B.      Plaintiff-Parents Lack Standing to Assert a**
**        <u>Violation of the Plaintiff-Children's Constitutional Rights</u>**

In the event Plaintiff-parents are asserting a claim that the alleged mistreatment of the Plaintiff-children violated the Plaintiff-parents' constitutional rights, their claim would fail as a matter of law for lack of standing.

Claims under Section 1983 must be based on a violation "entirely personal to the direct victim of the alleged constitutional tort." <u>Claybrook v. Birchwell</u>, 199 F.3d 350, 357 (6th Cir. 2000). "Accordingly, only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim; conversely, no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." <u>Id.</u>; <u>see also</u> <u>Harrison v. Harlem Hosp.</u>,2007 WL 2822231, *4 (S.D.N.Y. 2007). Thus, "parents lack standing to bring individual claims under § 1983 based solely upon deprivation of a child's constitutional rights." <u>Phillips ex rel. Green v. City of New York</u>, 453 F.Supp.2d 690, 734 (S.D.N.Y.2006) (citation omitted).

At best, in a light most favorable to Plaintiffs, the Complaint suggests that they are claiming that as a result of the injuries caused by the alleged tortious acts, the Plaintiff-parents have been deprived of their parent-child relationship. In light of the facts alleged, however, that claim is untenable.

At the outset, the allegations do not suggest that the Plaintiff-parents have lost their parent-child relationship. The Complaint does not allege a plausible claim that Reidy "deprived"

them of the care of the children.

If anything, the parent-child relationship has allegedly been affected. However, state action which merely has an incidental effect on the parent-child relationship is insufficient to make out a Section 1983 claim on behalf of a parent. Rodenhouse v. Palmyra-Macedon Cent. School Dist., 2008 WL 2331314, *4 (W.D.N.Y. 2008). Only if the parent-child relationship itself is targeted will a constitutional harm to a plaintiff's parental right be cognizable under Section 1983. Id, citing Torres v. Howell, 2006 WL 1525942 at *8 (D.Conn. 2006) (internal citation omitted).

There is no allegation implying that Defendant Reidy took official actions directed at the parent-child relationship. To the contrary, the allegations reveal that the unfortunate disruption of the parent-child relationship would only have been incidental to Reidy's alleged failure to be forthcoming pending the investigation, which is insufficient as a matter of law. See Rodenhouse, supra, at *4.

If Plaintiff-parents were permitted to maintain a claim based on the indirect deprivation of their relationship with their children, they would essentially be vicariously asserting their children's constitutional claims, in contravention of well-settled principles. See Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Accordingly, Plaintiff-parents' family association claims should be dismissed.

**C.     The Complaint Fails to Plead Any Allegation
        of Personal Involvement of Defendant Reidy**

Of particular significance is the fact that the Complaint lacks any allegation that Reidy had any personal involvement in the alleged deprivation of Plaintiffs' constitutional rights.

On this ground alone the Complaint should be dismissed as against him.

To be sure, it is well-established that "[i]n order to succeed on a claim under Section 1983, a plaintiff must establish personal involvement in the alleged constitutional deprivation by each defendant." Yant v. Scholack, 1998 WL 157053, *7 (S.D.N.Y. 1998); see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). A supervisory official cannot be held liable under Section 1983 on a theory of respondeat superior. Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993) (citing Monell v. Department of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978)). Nor may he be held liable merely because he occupies a high position in the chain of command. Colon, 58 F.3d at 874. The personal involvement of a supervisory defendant may be shown only by evidence that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [individuals] by failing to act on information indicating that unconstitutional acts were occurring.

Id. at 873; see also Tierney v. City of New York, 2007 WL 895133, *20 (S.D.N.Y. 2007). Further, "[b]road, conclusory allegations that a high-ranking defendant was informed of an incident are insufficient to impose liability." Gibson v. Commissioner of Mental Health, 2006 WL 1234971, *5 (S.D.N.Y. 2006).

13

1.      **No Participation or Failure to Remedy a Wrong**

Nowhere in the Complaint do Plaintiffs allege that defendant Reidy personally participated in the alleged wrongful acts, or failed to remedy a wrong after discovering it. Plaintiffs' only references to Reidy center on his failure to provide up-to-date details on what he had already been informed of at the time he first notified the parents that there had been a situation in the Bridge Program, and his declaration that parents entrust their children to school administrators and that he would do everything within his power to protect the children all of the time. The Complaint also vaguely states that "school administrators" knew about the misconduct in the Bridge Program a least a month earlier, but does not identify which administrators. From these allegations, there is nothing to imply that Reidy knew or should have known what was allegedly transpiring in the classrooms at the time of their occurrence. These statements do not allege Reidy knew of the alleged constitutional violation at the time of its occurrence much less contain the specificity of personal involvement necessary to claim an award of damages against them under § 1983. See e.g. Shomo v. City of New York, 2005 WL 756834, *7 (S.D.N.Y. 2005) (insufficient allegation of personal involvement where plaintiff alleged that although Fraser and Perry were aware of the violations they did nothing to protect him, but did not adequately state that Fraser and Perry were aware of the violations he alleged, did not indicate when he complained to their offices, or what the content of the complaint was, did not explain how Fraser and Perry were responsible, directly or indirectly, for the acts of the other named defendants, or the prevailing conditions that contributed to the plaintiff's injuries); cf. Gibson, supra at *7 (claim that individual defendant "[a]s unit chief failed intervene to stop the amount of abuse against patients by staff treatment assistants or punish the wrong doers [sic]" sufficed as allegation of

14

personal involvement); Jean-Laurent v. Wilkerson, 438 F.Supp.2d 318, 326 (S.D.N.Y. 2006) (allegation that Horn "expressly authorized ... [corrections officers] to maintain a custom practice that authorized the use of physical force against inmates without just cause" fell into the third Colon category and thus properly stated a claim that Horn was personally involved in violating plaintiff's constitutional rights). In that regard, the Complaint does not allege that Reidy failed to remedy the wrong.

### 2.    **No Creation of a Policy or Custom**

Nor does the Complaint assert that Reidy created a policy or custom under which unconstitutional practices occurred. Although it alleges that Reidy has policy-making authority with respect to the District's administration of the Bridge Program, it does not allege that he created or endorsed an official policy permitting the unconstitutional practices. Instead it sets forth the conclusory assertions that Reidy as well as DeAlleaume and the District were grossly negligent or negligent in hiring, training and/or supervising the employees who allegedly engaged in the misconduct (Compl. ¶ 197), and that "by policy, practice and/or custom, the District failed to properly hire, train and/or supervise teachers' aides and those assigned to interact with classified students." Compl. ¶ 198-99. Those assertions are insufficient to create an inference that Reidy was personally involved in the deprivation of Plaintiffs-children's civil rights.

Assuming the employees were not acting within their scope of employment (see Point II, infra), Reidy can be liable for negligent hiring if there is evidence that he knew or should have known of any propensity by the employee to act in the fashion he/she did. Coffey v. City of New York, 49 A.D.3d 449, 853 N.Y.S.2d 551 (2008). An employer is obligated to "investigate a prospective employee when it knows of facts that would lead a reasonably prudent person to

investigate that prospective employee." T.W. v. City of New York, 286 A.D.2d 243, 245, 729 N.Y.S.2d 96, 97-98 (1st Dep't 2001). Thus, an essential element of this claim is that the employer knew its employees' wayward tendencies and failed to act to mitigate them before the plaintiff was injured.

Plaintiffs fail to allege that Reidy or any other District administrator possessed information that the employees involved in the alleged misconduct were prone to engage in such behavior. Accordingly, Plaintiffs have not made out a claim of negligent hiring. See Tesoriero v. Syosset Central School Dist., 382 F.Supp.2d 387, 401 (E.D.N.Y. 2005) (dismissing negligent hiring claim where there were no facts to indicate that the District knew or should have known about teacher's alleged propensity to sexually harass female students when he was hired); Haybeck v. Prodigy Serv. Co., 944 F.Supp. 326, 332 (S.D.N.Y.1996) (dismissing claims for negligent hiring and retention because plaintiff failed to allege that defendant knew about employee's tortious conduct); cf. Calder v. Planned Community Living, Inc., 1995 WL 456400, *10 (S.D.N.Y. 1995) (sustaining negligent hiring claim where plaintiff alleged that at the time of the hiring of the counselor alleged to have instigated and encouraged an altercation between the clients of defendant not-for-profit organization, various staff members expressed concern because his girlfriend was the organization's Executive Director).

Nor have Plaintiffs articulated a claim of negligent training. Normally in the context of a "failure to train" claim, a supervisor will not be held liable unless the failure to train amounts to deliberate indifference, Walker v. City of New York, 974 F.2d 293, 297 (2d Cir.1992), i.e., "that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Ricciuti v. New York City Transit Auth.,

941 F.2d 119, 123 (2d Cir. 1991). A deliberate indifference claim must meet three requirements: (1) the supervisory official "knew, to a 'moral certainty,' that his employees would confront a given situation; (2) training would reduce the risk of employees' mishandling the situation; and (3) the wrong choice by the employee would frequently cause the deprivation of someone's rights." Id. at 297.

Here, Plaintiffs' conclusory allegations fail to state a valid cause of action for negligent training. They simply allege, without more, that the District failed to train the employees assigned to interact with classified students. They do not discuss the content of the training or the propriety of the training. They fail to allege – and it is unimaginable – that Reidy knew that the employees would be tempted to exploit the deficiencies of autistic children for their own enjoyment such that he should have arranged for training to coach them in reducing this enticement.

"The mere allegation that the municipality failed to train its employees properly is insufficient to establish a municipal custom or policy." Neighbour v. Covert, 68 F.3d 1508, 1512 (2d Cir.1995). Accordingly, Plaintiffs' claim for negligent training must fail.

### 3.    No Gross Negligence in Supervising Subordinates

The Complaint does allege that Reidy and the District were "negligent, causing injury to each of the plaintiffs, including the minor children, supervision over whom was their mandatory duty." Compl. ¶ 207. It is true that the duty to supervise encompasses the supervision of teachers as well as students, insofar as teachers present known or knowable potential threats to the students' well-being." Tesoriero v. Syosset Central School Dist., 382 F.Supp.2d 387, 402 (E.D.N.Y. 2005). Here, too, however, the Complaint fails as a matter of law.

17

An official will have breached the duty to supervise employees only if " 'a parent of ordinary prudence placed in the identical situation and armed with the same information would invariably have provided greater supervision.' " Tesoriero, supra quoting Murray v. Research Found. of State Univ. of N.Y., 283 A.D.2d 995, 723 N.Y.S.2d 805, 807 (4th Dep't 2001). In that regard, a plaintiff's injury must still have been "reasonably foreseeable," see Estevez-Yalcin v. Children's Vill., 331 F.Supp.2d 170, 176 (S.D.N.Y.2004) (citations omitted), and proximately related to the school's failure to provide adequate supervision. Tesoriero, at 402.

Plaintiffs fail to allege that Reidy had any information about what was happening in the Bridge Program, or that he was aware of certain facts which would indicate possible misconduct so as to render it foreseeable. Cf. Doe v. Whitney, 8 A.D.3d 610, 779 N.Y.S.2d 570, 572 (2d Dep't 2004) (a fact-finder could reasonably conclude that a school negligently failed to supervise a sexually-abusive teacher, where the teacher often kept the student victim in his classroom at recess, or removed him from other classes on a weekly basis without explanation but with the consent of the other teachers); Jean-Laurent v. Wilkinson, 540 F.Supp.2d 501, 512 (S.D.N.Y. 2008) (sustaining claim of negligent supervision where complaint alleged that Jorgensen and Burrows were "at or in very near proximity" of the staircase and knew that plaintiff's constitutional rights were allegedly being violated by an inferior officer when, inter alia, just prior to being escorted into the stairwell, Jorgensen instructed an officer to take Inmate # 1 into a stairwell and "break the inmate's leg if necessary to make him comply with the order given," and that Jorgensen and Burrows heard inmate # 1 "screaming very loudly for mercy"); Murray, 723 N.Y.S.2d at 807 (negligent supervision claim sustained against an institution that allowed an instructor to release a student not enrolled in that instructor's course from another class

every week over a six-month period, in order to meet with him alone in a room with the door

closed, in contravention of district policy). In that respect the Complaint does not connect Reidy's

"policy-making authority" involving the District's administration of the Bridge Program with the

alleged tortious actions taken inside a classroom. Accordingly, there is no reasonable inference

from which it could be deduced that Reidy should have known to supervise the teachers in the

Bridge Program to give rise to a breach of his duty to supervise.

### 4. No Deliberate Indifference Due to Failure to Act on Information

Nor does the Complaint suggest that Reidy's action or decision constituted a

failure to train or supervise to the extent it amounted to "deliberate indifference" to the

Plaintiffs' rights. Evaluating deliberate indifference invokes "an objective standard, requiring

determination of what the official knew or should have known." Weyant v. Okst, 101 F.3d 845,

856 (2d Cir.1996), citing Liscio v. Warren, 901 F.2d 274, 276-77 (2d Cir.1990). As set forth

above, nothing suggests that Reidy knew about the alleged misconduct or articulates how or

why he should have known.

Accordingly, the claims of violation of substantive due process rights and negligent

supervision as they relate to Reidy should be dismissed.


### D. The District is Not Liable Under Section 1983

Liability for the District may only be found " 'when execution of a government's

policy or custom, whether made by its lawmakers or by those who edicts or acts may fairly be said

to represent official policy, inflicts the injury.' " Aggarwal v. N.Y. City Health & Hosp. Corp.,

2000 WL 172787, at *7 (S.D.N.Y. 2000), quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658,

694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); accord Dangler v. N.Y. City Off Track Betting Corp.,

193 F.3d 130, 142-43 (2d Cir.1999).  As the allegations do not give rise to a plausible claim that

the District's official policy was to condone the alleged exploitation and abuse of autistic children

within its care, Plaintiffs' constitutional claim as against the District must be dismissed.


E.    **Reidy is Protected by the Doctrine of Qualified Immunity**

Under the doctrine of qualified immunity, "[p]ublic officials enjoy immunity from

suit for damages . . . for acts undertaken in their official capacity, unless their conduct violates

clearly established constitutional rights of which an objectively reasonable official would have

known" or that it was "objectively reasonable" to believe that their acts did not violate clearly

established rights, in other words, if "officers of reasonable competence could disagree on the

legality of the defendants' actions." Ford v. Moore, 237 F.3d 156, 163 (2d Cir.2001); Anderson v.

Creighton, 483 U.S. 635, 637-41, 107 S.Ct. 3034, 3037-40 (1987).  "The primary goal of qualified

immunity is to permit government officials to act in areas of legal uncertainty without undue fear

of subsequent liability."  Hanrahan v. Doling, 331 F.3d 93, 98 (2d Cir. 2003).  "'The privilege is

'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is

effectively lost if a case is erroneously permitted to go to trial.'"  Saucier v. Katz, 533 U.S. 194,

200-01, 121 S.Ct. 2151, 2156 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct.

2806 (1985)).  Consequently, a determination as to whether a defendant is entitled to qualified

immunity "should be made early in the proceedings so that the costs and expenses of trial are

avoided where the defense is dispositive."  Saucier, 533 U.S. at 200, 121 S.Ct. at 2156.

The qualified immunity analysis is a three-step inquiry that should be considered in

20

sequential order. Id. at 200.  First, the court must determine whether the plaintiff has alleged a violation of a constitutional right. Id. at 201.  If the facts alleged show that the defendant violated a constitutional right, then the court considers whether the right was clearly established at the time of the conduct. Id, at 201.  Finally, if the plaintiff had a clearly established constitutionally protected right that was violated, he or she must then demonstrate that the defendant's actions were not objectively reasonable.  Harhay v. Town of Ellington Bd. of Educ., 323 F.3d at 206, 211 (2d Cir. 2003).

Reidy is entitled to qualified immunity considering that, as detailed above, he did not violate Plaintiffs' constitutional rights.  For that reason, as a matter of law it could not have been clear to a reasonable administrator that his conduct was unlawful in the situation he confronted.

Reidy's actions regarding revealing the extent of the accusations made against the teachers in the Bridge Program, to the extent that such an obligation could be imposed on him individually based on the facts of this case, were certainly "objectively reasonable" for him to believe that no rights were being violated by his conduct. See Hanrahan, supra, 331 F.3d at 98 ("In evaluating whether a right is clearly established . . . , the court looks to both "'the clarity of the law establishing the right allegedly violated' as well as 'whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood' that his actions were unlawful.") (citation omitted).  Accordingly, Plaintiffs' constitutional claim as against Reidy should be dismissed. Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986) ("[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.").

21

## POINT II

## THE ALLEGATIONS DO NOT SUPPORT AN INFERENCE THAT
## THE DISTRICT IS VICARIOUSLY LIABLE FOR THE ALLEGED MISCONDUCT

Under the doctrine of *respondeat superior*, an employer may be held vicariously liable for a tort committed by an employee while acting within the scope of his employment. Riviello v. Waldron, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 302 (1979); Galvani v. Nassau County Police Indemnification Review Bd., 242 A.D.2d 64, 68, 674 N.Y.S.2d 690, 693 (2d Dept. 1998). In that regard, as to negligent training et al. under state law, if the tortfeasors employed by the District were acting within the scope of their employment when they committed the acts, plaintiffs' claims for negligent training, retention and supervision fail as a matter of law. See, e.g., Kramer v. City of New York, No. 04 Civ. 106, 2004 WL 2429811, at *12 (stating that "[w]hen an employee is acting within the scope of her employment, her employer may be held liable for the employee's negligence only under a theory of *respondeat superior,* and no claim may proceed against the employer for negligent hiring or retention.") (quoting Colodney v. Continuum Health Partners, Inc., 2004 WL 829158 at *9 (S.D.N.Y. 2004)); Griffin v. City of New York, 287 F.Supp.2d 392, 397-98 (S.D.N.Y.2003).

Here, the allegations detailed in the Complaint demonstrate that, if true, clearly the employees were not acting within their scope of employment. "[A]n employee's actions are not within the scope of employment unless the purpose in performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business.'" Davis v. City of New York, 226 A.D.2d 271, 272, 641 N.Y.S.2d 275, 276 (1st Dept. 1996), citing Stavitz v. City of New York, 98 A.D.2d 529, 531, 471 N.Y.S.2d at 272,

22

274.)  The alleged repugnant acts are those which obviously would be undertaken by the employees for personal motives unrelated to the performance of their duties.  In no way would these alleged acts advance the interests of the District or Reidy.  The District's administrators were placed in the difficult position of having to divulge to the parents the alleged misconduct while simultaneously assuring the parents that the children are safe.  The administrators have the unenviable task of encouraging the parents to continue sending their children to the Bridge Program despite the allegations, and to ensure that the children within the Program continue to receive proper daily instruction while under the cloud of such an alarming controversy.  If anything, the allegations that the employees have committed these acts have substantially harmed the District's interests.  Thus, imposition of vicarious liability on the superiors and the District for these acts is precluded.  Galvani, 242 A.D.2d at 68, 674 N.Y.S.2d at 693-94; Heindel v. Bowery Savings Bank, 138 A.D.2d 787, 788, 525 N.Y.S.2d 428, 428 (3rd Dept. 1988); Island Associated Coop., Inc. v. Hartmann, 118 A.D.2d 830, 830-31, 500 N.Y.S.2d 315, 316 (2d Dept. 1986).

### POINT III

### PLAINTIFFS HAVE NOT STATED A CLAIM FOR
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs fail to state a cause of action as against Reidy and the District for negligent infliction of emotional distress.

To establish a claim for negligent infliction of emotional distress under New York law, a plaintiff must demonstrate either (1) that he or she was threatened with physical harm as a result of the defendant's negligence and he or she suffered emotional injury from witnessing the

23

death or serious bodily injury of a member of his or her immediate family (known as the

"bystander" theory); or (2) that he or she suffered an emotional injury from the defendant's breach

of a direct duty owed to the plaintiff which unreasonably endangered his or her own physical

safety (known as the "direct duty" theory). See Mortise v. United States, 102 F.3d 693, 696 (2d

Cir.1996).

Clearly neither the Plaintiff-parents nor Plaintiff-children have suggested that their

physical safety was ever threatened or endangered by Reidy.  Nor, as elaborated above, did Reidy

breach a direct duty owed to the Plaintiffs which unreasonably endangered their safety.

Accordingly, the negligent infliction of emotional distress claim must be dismissed as against

Reidy and the District.


### POINT IV

### PLAINTIFFS HAVE NOT STATED A CLAIM
### FOR VIOLATION OF EXECUTIVE LAW § 296

Plaintiffs have not stated a cause of action for violation of the state's Human

Rights Law as against Reidy and the District.

The overall purpose of the Human Rights Law is to bar discrimination against

persons based upon their personal attributes. Capasso v. Metro. Transp. Auth. of State of N.Y.,

198 F.Supp.2d 452, 465 (S.D.N.Y.2002), quoting Bruno v. Pembrook Mgmt., Inc., 212 A.D.2d

314, 628 N.Y.S.2d 971, 975 (2d Dep't 1995).  Toward that end, the statute contains numerous

subdivisions (most of which consist of multiple parts or paragraphs) addressing a myriad of

discriminatory practices in various walks of life. See generally Exec. Law § 296.

Plaintiffs do not specify which of the NYHRL's specific parts or provisions the Defendants allegedly offended, but rather summarily state that Defendants discriminated against Plaintiff-children on the basis of their disability. Thus, it is assumed that the Complaint purports to state a claim under Section 296 subdivision 4 of the law, which reads in relevant part:

> It shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be nonsectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law ... to permit the harassment of any student or applicant, by reason of his ... disability ...

However, government officials or employees who make decisions that are discretionary, but not judicial in nature, are entitled to qualified immunity under the Human Rights Law unless there is bad faith or the action is taken without a reasonable basis. Dawson v. County of Westchester, 351 F.Supp.2d 176 (S.D.N.Y. 2004); Hiller v. County of Suffolk, 81 F.Supp.2d 420, 423 (E.D.N.Y. 2000). Here, the allegations reveal that Reidy used discretion in making his alleged decision not to reveal all of the details he possessed about the accusations against the teachers in the Bridge Program. There is nothing to suggest that his decision was made in bad faith or without a reasonable basis. To the contrary, Reidy was likely justified in failing to act hasty as he had to ensure the effective operation of the District's services. Consequently, Reidy enjoys qualified immunity with respect to the Plaintiffs' Human Rights Law claim, and as asserted as against Reidy, and the District vicariously, it should be dismissed as a matter of law.

25

## CONCLUSION

For all of the foregoing reasons, Reidy and the District respectfully request that this

Court grant the instant motion to dismiss as well as such other and further relief as this Court

deems just and proper.

Dated: New York, New York
        August 15, 2008

                                        Respectfully submitted,

                                        SNITOW KANFER HOLTZER
                                        & MILLUS, LLP

                        By:     _____
                                        PAUL F. MILLUS (PM 8240)
                                        575 Lexington Avenue
                                        New York, New York 10022
                                        (212) 317-8500

                                        *Counsel for Defendants*
                                        *Dr. Robert J. Reidy, Jr. and*
                                        *Mahopac Central School District*

Of Counsel,
        Paul F. Millus
        Virginia K. Trunkes

M:\CLIENT\444\02\MOL.wpd

26